IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLUMBERS' PENSION FUND, LOCAL 130, U.A., PLUMBERS' WELFARE FUND, LOCAL 130, U.A., THE TRUST FUND FOR APPRENTICE AND JOURNEYMAN EDUCATION AND TRAINING LOCAL 130, U.A., PLUMBERS' RETIREMENT SAVINGS PLAN FUND, LOCAL 130, U.A., ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | Case No. 21 C 0569 |
| ) v. ) ) | Judge Robert W. Gettleman |
| CHICAGO POOLS, INC. and SUNSET POOLS & SPAS, INC., ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Plumbers' Pension Fund, Local 130, U.A., Plumbers' Welfare Fund, Local 130, U.A., the Trust Fund for Apprentice and Journeyman Education and Training Local 130, U.A., and Plumbers' Retirement Savings Plan Fund, Local 130, U.A. have brought a two-count collection action under section 502 of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1132, 1145, against defendants Chicago Pools, Inc. and Sunset Pools & Spas, Inc. essentially alleging that defendants are alter ego corporations that constitute a single vehicle designed to evade a Collective Bargaining Agreement with the Union. The complaint alleges that Chicago Pools is a mere disguised extension of Sunset Pools established for the sole purpose of allowing Sunset Pools to obtain "union work" that it would not otherwise receive to the detriment of the plaintiffs. Count I is brought against Sunset Pools, alleging that it is the alter ego of Chicago Pools and therefore liable to the plaintiff trust funds for payment of all fringe benefit contributions shown to be due for all hours worked by its employees doing plumbing work.

Count II is brought against both defendants seeking audits of each for the period of March 20, 2017, to the present and payment of all contributions shown by the audit to be due. Defendants have moved for summary judgment, arguing that the undisputed facts demonstrate that defendants are not alter egos of each other or a single employer. Because material facts remain in dispute, the court denies defendants' motion.

## BACKGROUND

Plaintiffs are multi-employer employee benefit plans. Defendant Sunset Pools was incorporated in 2007 and is owned by Nicholas Luisi. Sunset Pools has never been a signatory to any union contract. Defendant Chicago Pools was incorporated in 2013 by Nicholas Luisi's father John. Chicago Pools became a signatory contractor with the Plumbers Local Union 130, U.A. on March 20, 2017, making it a union plumbing contractor, and binding it to the terms of the Collective Bargaining Agreement ("CBA") and Trust Agreements. At one time John was a corporate officer of Sunset Pools.

Both defendants engage in the same primary business, the installation and building of swimming pools. Both perform work that would be covered under the CBA. Chicago Pools' website redirects to Sunset Pools website. Sunset Pools is the only entity that sub-contracts work to Chicago Pools, and all of Chicago Pools' revenue is derived from Sunset Pools. Chicago Pools does not work for any company except Sunset Pools. According to John Luisi, Sunset Pools wanted to "get in commercial jobs in the city, and probably 95 percent of those jobs are union. And those jobs require union plumbers. So Sunset subs those jobs out to Chicago because Chicago has union workers."

There is no written agreement between Sunset Pools and Chicago Pools. Nicholas Luisi decides which jobs to subcontract to Chicago Pools, there is no negotiation between the companies, and Nicholas Luisi does the bidding on the jobs Chicago Pools works on. Chicago Pools bills Sunset Pools weekly. John gives Nicholas the labor rates that the workers receive, including the fringe benefits, and tells Nicholas to add 20 percent for Chicago Pools' profit. Sunset Pools provides all materials and most of the equipment to Chicago Pools, and Nicholas Luisi is an authorized signor on Chicago Pool's account at Chase Bank.

Nicholas Luisi is the Project Manager on all Chicago Pools projects, oversees its work, oversees its superintendent, Michael Kampenga, and determines all scheduling. The two defendants share at least two common employees.

## DISCUSSION

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to show that there is no genuine dispute of material fact preventing the entry of judgment in its favor as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Supreme Court has determined that a fact is "material" when it may affect the outcome of the suit under the governing law and the dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court's function is limited to determining whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a jury for resolution at trial. See id. at 249. The court must view

3

all facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

In its complaint, plaintiff seeks to hold Sunset Pools liable under the single employee and/or alter ego theories for contributions owed to it by Chicago Pools, as well as contributions owed by Sunset Pools for its own employees who performed covered work. In their motion, defendants argue that the undisputed facts demonstrate that they are neither a single employer nor alter egos of each other. The two theories are similar, with overlapping elements. "In general, the alter ego analysis is the same as that of the single employer doctrine, with the added element of intent to evade the employer's obligations under labor laws." Tr. of Pension, Welfare and Vacation Fringe Benefit Funds of IBEW Local 701 v, Favia Elec. Co. Inc., 995 F.2d 785, 788-89 (7th Cir. 1993).

The single employer doctrine holds that "when two entities are sufficiently integrated, they will be treated as a single employer for certain purposes." Boudreau v. Gentile, 646 F. Supp. 2d 1016, 1021 (N.D. Ill. 2009) (citing Moriarty v. Svec, 164 F.3d 323, 332 (7th Cir. 1998)). Courts look at certain criteria to determine whether two companies constitute a single enterprise: 1) interrelation of operations; 2) common management; 3) centralized control of labor relations; and 4) common ownership. Id. "No one of these factors is conclusive; instead, the decision maker must weigh the totality of the circumstances," Svec, 164 F.3d at 332, and

4

"[a]ssuming that two entities are found to be a single employer, then a CBA entered into by one entity will apply to the other entity, and contributions from both can be required, to the extent that the CBA's definition reaches the employees of the other entity." Flavia, 995 F.2d at 788. "Ultimately, single employer status . . . is characterized by the absence of an arm's length relationship found among unintegrated companies." Lippert Tile Co., Inc. v. Intern'l Union of Bricklayers and Allied Craftsmen, Dist. Council of Wisconsin & Its Local 5, 724 F.03d 939, 947 (7th Cir. 2013).

As noted, the alter ego analysis is the same, except to establish alter ego, plaintiff must demonstrate defendants' intent to evade the employer's obligations under labor laws. Id. (citing Flavia, 995 F.2d at 788-89). It is not necessary, however, to meet all of the elements of the single employer doctrine for the alter ego doctrine to apply. Alter ego has been found to exist "even though no evidence of actual common ownership was present." Flavia, 995 F.2d at 789 (citing Central States Southeast and Southwest Areas Pension Fund v. Sloan, 902 F.2d 593, 597 (7th Cir. 1986)). The essential element of the alter ego doctrine is a finding of "the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." Favia, 995 F.2d at 789. Unlawful motive or intent are the critical inquiries. Id.

In the instant case, there is more than ample evidence to support both theories. For example, there is evidence that the operations of the companies are interrelated. They share some common employees, one of whom performs plumbing work for Sunset Pools that would be covered under Chicago Pools' CBA. Chicago Pools works only for Sunset Pools, on Sunset Pools' projects. Nicholas Liusi is the project manager on every project on which Chicago Pools

works. As project manager he controlled Chicago Pools' work, directed its superintendent and controlled its schedule. Under these facts, a trier of fact could easily conclude that Nicholas Liusi is the de-facto supervisor of Chicago Pools and its employees.

There also is evidence that the two companies are financially interrelated. Chicago Pools' only income is from Sunset Pools. There are no written records or contracts between the companies. Chicago Pools does not submit written invoices to Sunset Pools, nor does it keep tract of time records for its employees. Its ledgers indicate periodic payments from Sunset Pools, and no other source of income or revenue. The ledgers do not indicate what the payments are for, each entry indicating "Shotcrete Pool Revenue."

There is also evidence of common management. The common management factor looks at actual or active control, as distinguished from potential control, over the other's day-to-day operations." Lippert Tile, 724 F.3d at 947. In the instant case, the evidence shows that Sunset Pools controls both the bidding process and the actual on-site work of both companies. This is sufficient to conclude there is common management.

The third factor, centralized control over labor relations, is determined by the sharing of responsibility for making day-to-day labor relation decisions, such as setting wages, hiring, and firing. Id. It is not clear from the record who ultimately controls Chicago Pool's labor, but there is evidence that Nicholas Liusi controls and supervises Chicago Pools' Superintendent, Mitchel Kampenga. These facts could tend to prove that as Project Manager, Sunset Pools controls Chicago Pools' labor.

With respect to common ownership, it is undisputed that Nicholas owns 100 percent of Sunset Pools and John Liusi Owns 100 percent of Chicago Pools. Nevertheless, ownership of

6

two companies by members of the same family can be evidence of common ownership and alter ego. Central States v. Sloan, 902 F.2d at 596.

Finally, with respect to alter ego, there is also some evidence from which a trier of fact could conclude that defendants intended to evade their obligations under the CBA. John Liusi stated that Chicago Pools was formed for the sole purpose of allowing Sunset Pools to obtain union projects that it could not otherwise obtain. By using Chicago Pools, Sunset Pools could bid on and perform work on those projects without paying fringe benefits for covered work performed by its employees. Consequently, the court finds that there is sufficient evidence in the record to conclude that the two companies are alto egos of each other, and defendants have failed to demonstrate that the undisputed facts demonstrate otherwise. The motion for summary judgment is denied.

## CONCLUSION

For the reasons described above, defendants' motion for summary judgment [37] is denied.

ENTER:

Robert W. Gettleman
United States District Judge

**DATE:** **January 20, 2023**